HOFFMANN–LAROCHE, INC., Plaintiff,

v.

Joseph A. CALIFANO, Jr., et al., Defendants.

Civ. A. No. 78–0467.

United States District Court,
District of Columbia.

Findings of Fact and Conclusions of
Law April 7, 1978.

On Motion to Dismiss May 10, 1978.

David H. Lloyd, Andrew S. Krulwich, Maxwell J. Mehlman, Washington, D. C., for plaintiff.

Peter J. Levine, Sp. Asst. U. S. Atty., Washington, D. C., for defendants.

Lester M. Bridgeman, Washington, D. C., for movants to intervene.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GESELL, District Judge.

Plaintiff manufactures Librium[R], the formerly patented form of chlordiazepoxide hydrochloride ("chlordiazepoxide"), a prescription drug used in the treatment of anxiety, tension, and other psychologically damaging diseases. Several other drug manufacturers now produce and supply chlordiazepoxide in generic form or under other brand names, but as recently as June 1977 Librium[R] accounted for 99% of all sales of the drug. Defendants are the Secretary of Health, Education, and Welfare and two other HEW officials: the Administrator of the Health Care Financing Administration and the Chairman of the Pharmaceutical Reimbursement Board ("Board").[1]

Over a year ago, defendants, acting through the Board, began to consider establishing by regulation a ceiling price over which no reimbursement would be made for purchases of chlordiazepoxide under Medicare, Medicaid, and other programs administered by HEW. On February 24, 1978, after administrative proceedings and purporting to act pursuant to 42 U.S.C. §§ 1395u(b)(3), 1396b(i)(1) (Supp. V 1975) and 45 C.F.R. §§ 19.1–.6 (1976), defendants propounded Maximum Allowable Costs ("MACs") for three dosages of the drug. 43 Fed.Reg. 7714 (1978). The levels set are significantly lower than the price plaintiff charges for Librium[R], but do not exceed the known price set by any other manufacturer of chlordiazepoxide. On March 17, 1978, plaintiff sued to enjoin preliminarily and permanently operation of the MACs, which are due to become effective on April 10, 1978, and for declaratory relief. An opposition was filed and arguments heard.

The conditions warranting issuance of a preliminary injunction in this jurisdiction are well known. The moving party must demonstrate (1) a likelihood of success on the merits; (2) that absent such relief it will be irreparably injured; (3) that issuance of a stay would not substantially harm other parties interested in the proceedings; and (4) that the public interest lies with issuance. *Washington Metropolitan Area Transit Commission (WMATC) v. Holiday Tours, Inc.,* 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App. D.C. 106, 110, 259 F.2d 921, 925 (1958). The merits of this case concern the validity of the Board's determination, as a necessary precondition to issuance of the MACs, that chlordiazepoxide is "widely and consistently available" at or below MAC prices in all localities and at all dosages for which a MAC is adopted. 42 U.S.C. § 1395u(b)(3) (Supp. V 1975); 45 C.F.R. § 19.5 (1976). Plaintiff contends that defendants applied an erroneous and overbroad interpretation of the standard, that in reaching their determination defendants relied on evidence not properly within the administrative record, and that even this improper evidence, viewed under the erroneous standard, does not support a finding that the drug is "widely and consistently available" at MAC

---

1. Defendants are sued in their official capacities. Claims against them individually were dismissed by stipulation on March 30, 1978.

prices. Any one of plaintiff's arguments, if correct, would suffice to vitiate the MACs set. All raise substantial questions.

The dispute over the interpretation of the standard centers around the question of whether a drug must be on pharmacy or warehouse shelves in sufficient quantities at the MAC price to be "widely and consistently available" or whether it suffices to show substantial evidence that should the MAC be adopted, the drug would soon be readily obtainable by suppliers. Unfortunately there is little in the legislative history to suggest the meaning Congress ascribed to the standard when it was included in the Social Security Amendments of 1972, Pub.L.No. 92–603, 92d Cong., 2d Sess. (1972), and defendants' interpretations have not been consistent. There is evidence, however, that the standard was not intended to allow HEW to create a new market by imposing a MAC when existing production and distribution lines do not already suffice to supply the drug in sufficient quantities at the MAC price. See 40 Fed. Reg. 32289 (1975). The Court's review thus far of the evidence before the Board indicates a strong likelihood that immediate implementation of MACs for chlordiazepoxide would have just this effect.

Even assuming that the more liberal standard applies, the Board may have committed serious error by soliciting and considering improper evidence. The Board's regulations provide that the MAC determination be made "[a]fter considering the written comments, the presentations made at any public hearing and any other evidence included as a part of the hearing record." 45 C.F.R. § 19.6(i) (1976). Two hearings were held regarding chlordiazepoxide, and plaintiff was the only manufacturer to testify or submit information at either. After the second hearing, the Board, acting ex parte, contacted three other manufacturers of the drug to inquire about inventory and projected production. The evidence obtained admittedly was considered by the Board, see 43 Fed.Reg. 7715 (1978), and plaintiff, who only learned of the ex parte information after final adoption of the MACs, claims that the deci-

sion was thus rendered void, citing *Home Box Office, Inc. v. FCC,* 567 F.2d 9 (D.C. Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Whether or not plaintiff will prevail on this question requires a determination, first, of whether the information so gained can in any way be considered to be "part of the hearing record," and if so, of the extent to which the information thus garnered "may have materially influenced the action ultimately taken." *Action for Children's Television v. FCC,* 564 F.2d 458, 476 (D.C. Cir. 1977). These are serious questions.

Whether or not the Board had before it sufficient evidence to warrant a finding of wide and consistent availability, even under its own interpretation of that standard and considering all of the questionable evidence, is also highly questionable. Defendants' own advisory committee, after holding a hearing, recommended against establishing any MACs for chlordiazepoxide, finding that it is not "widely and consistently available." In the face of this and defendants' own recognition that "[c]hlordiazepoxide HCL shows a very low overall penetration by products other than the leading brand (99%)," which admittedly sells at a price far exceeding the MAC limit, the evidence as to the production and distribution projections of competitors, the amount of delay before supplies could be fully stocked, and indeed even the willingness of other producers to supply adequate amounts at the MAC price is very thin indeed. The Court's doubts are only bolstered by defendants' failure to accompany the final notice establishing the MACs with any more than the most conclusory rationalization of its action. Apparently lacking is substantial evidence of the "reasoned decisionmaking" that has so often been mandated by the United States Court of Appeals for the District of Columbia Circuit. See *National Ass'n of Food Chains, Inc. v. ICC,* 175 U.S.App.D.C. 346, 356, 535 F.2d 1308, 1318 (1976); *see also Portland Cement Ass'n v. Ruckelshaus,* 158 U.S.App.D.C. 308, 335, 486 F.2d 375, 402 (1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). On this motion

for preliminary relief it is not appropriate to determine finally the sufficiency of the evidence of the legitimacy of the procedures and interpretations followed by the Board. It suffices to conclude that plaintiff has established a significant likelihood of success on the merits.

◼ The remaining factors also favor preliminary relief. If the order goes into effect, plaintiff will suffer loss of sales and good will for which it would have no right of recourse, and thus its injury will be irreparable. The loss is admittedly economic, but since no "adequate compensatory or other corrective relief will be available at a later date," it is not one of the " 'mere' economic injuries which under *Virginia Petroleum Jobbers* are insufficient to warrant a stay." *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S.App.D.C. at 110, 259 F.2d at 925; *WMATA v. Holiday Tours, Inc.*, 182 U.S.App.D.C. at 222, 559 F.2d at 843 n. 2. Issuance of a preliminary injunction—especially one of the short duration contemplated here—will not substantially harm defendants, who have proceeded at a leisurely pace in promulgating the MACs. Nor is there any indication that it will have any substantially harmful effect on other manufacturers, who have manifested no interest at all in the entire proceedings. The public interest on the one hand supports lower prices for drugs; but on the other hand it requires a continuous and adequate supply of chlordiazepoxide for which eligible purchasers can be reimbursed. There is a significant probability that this latter condition cannot be met, and for this reason, together with the other considerations discussed above, the preliminary injunction must issue.

The Court issues the injunction with the understanding of all sides that the case must proceed expeditiously to final resolution. Defendants have labored long in an endeavor which, if done properly, is in the highest public interest. They have already filed a motion to dismiss. Plaintiff agrees that review shall be upon the record, which has been submitted, and therefore there is no need for evidentiary or discovery proceedings. To facilitate resolution, the following dates are set:

| | |
|---|---|
| April 17, 1978: | Plaintiff's opposition and, if desired, cross-motion for summary judgment to be filed; |
| April 28, 1978: | Defendants' reply and, if necessary, opposition to cross-motion to be filed; |
| May 5, 1978: | Plaintiff's reply, if any, to be filed. |
| May 5 at 2:00 P.M.: | Oral argument on motions. |

A preliminary injunction shall be entered in the form attached.

## ON MOTION TO DISMISS

The issues and factual background of this injunction action have already been adequately set forth in the Court's Findings of Fact and Conclusions of Law filed April 7, 1978, when a preliminary injunction was ordered. Defendants have now moved to dismiss.

Under 42 U.S.C. §§ 1395u(b)(3), 1396b(i)(1) (Supp. V 1975), the Pharmaceutical Reimbursement Board is authorized to establish Maximum Allowable Cost (MAC) ceilings for Medicare and Medicaid purchases of any drug found to be "widely and consistently available in a locality." The Board found that this standard was satisfied with regard to three dosages of chlordiazepoxide and sought to implement MACs. The question before the Court is whether its determination is consistent with the statutory standard and supported by the record.

Initially the Court recognized that plaintiff confronted irreparable injury and that the questions posed as to the meaning and effect of the statute as well as the nature of the proof raised difficult legal and factual issues. The failure of the agency adequately to explicate the basis for its action and the novelty of problems all strongly indicated the need for preliminary injunction. There have now been further proceedings, and the Court, having reviewed the administrative record, can resolve the motion to dismiss, which has been fully briefed and argued.

The legislative history gives no meaningful guidance as to the meaning of the phrase "widely and consistently available." [1] The agency has interpreted it as meaning not that the drug is already available on pharmacy and warehouse shelves in sufficient quantity at the MAC price to satisfy all of the Medicare and Medicaid demand, but rather that should a MAC be established the drug would be within reach promptly and without difficulty on a nationwide basis at the MAC price. This construction is reflected in the interpretive regulation, 45 C.F.R. § 19.5(c) (1976), which requires the Board to determine "the lowest unit price at which the drug is widely and consistently available *from any formulator or labeler*" (emphasis added), as well as in the preamble to that regulation. 40 Fed. Reg. 32297–98 (1975). The agency's interpretation is entitled to substantial, and in this case conclusive, weight. [2] *See e. g., Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

Accepting this interpretation, the proof is sufficiently competent rationally to support the Board's action. Several large licensed manufacturers with established distribution lines have recently begun to produce the drug. Capacity is more than sufficient, and economic factors indicate that at least the substantial concerns will supply once the MACs go into effect. The MAC prices are far below the plaintiff's monopoly-engendered price, but equal or exceed the offering prices of all other manufacturers, thus affording the latter great incentive to reach for the business. Immediate availability consistent with the statute and the regulations is therefore assured.

Given the factors outlined above, the unfortunate last-minute ex parte communication by HEW's staff with generic manufacturers is harmless error. It does not poison the result, given the fact that private groups were not making competitive claims in the proceeding within the meaning of *Action for Children's Television v. FCC,* 564 F.2d 458 (D.C. Cir. 1977).

Plaintiff was entirely correct in bringing this case to court, but it need never have been here. All too often the Court must deal with sloppy records, sparse in proof, developed bureaucratically mainly to meet the protocols of form and to support a decision already reached. Perhaps here the result was so obvious that carelessness took over. As the papers of the proposed intervenors show, a far more solid record could have been made in a short time. The Board should tighten its procedures in this type of proceeding and not slough off its responsibilities. Indeed, were the result here not so patently obvious once the interpretation of the statute has been put to rest, the Court's earlier concern with the Board's failure to explicate its reasons could have been decisive. Under the circumstances, the Court will not intervene.

The preliminary injunction is vacated. Defendants' motion to dismiss is granted, and the complaint shall be and hereby is dismissed. Defendants' motion for bond to cover the preliminary injunction period is denied in the Court's discretion for failure of defendants to make timely request and adequate showing. The motion of certain generic manufacturers to intervene as parties defendant is denied as untimely filed.

If this matter is to be appealed the Court will grant a stay until 10:00 a. m. on Friday, May 12, 1978, to enable plaintiff to seek further relief in the United States Court of Appeals for the District of Columbia Circuit.

SO ORDERED.

---

1. The "locality" is agreed to be the entire country.

2. Plaintiff argues that defendants are precluded from implementing a MAC where the effect would be to create a new market. Whether or not this will happen with chlordiazepoxide depends, of course, on the definition of "market." Implementation of a MAC will not increase demand for the drug, but it will certainly alter the sources of supply. As defendants correctly point out, however, this result is unavoidable: there would never be a MAC that did not in any way affect the sources of supply of a drug.